

ORIGINAL

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| THE JOEL & ZEHAVA ROSENFELD FAMILY FOUNDATION TRUST, on behalf of itself and all others similarly situated, | § § § § | |
| Plaintiff, | § § | 306-CV1100-G |
| v. | § § § | CIVIL ACTION NO. _____ |
| ACE CASH EXPRESS INC., ACE HOLDINGS I, LLC, JAY B. SHIPOWITZ, ROBERT P. ALLYN, J.M. HAGGAR, III, MARSHALL B. PAYNE, MICHAEL S. RAWLINGS, CHARLES DANIEL YOST, RAYMOND C. HEMMIG, and EDWARD W. ROSE, III, | § § § § § § § § | |
| Defendants. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff alleges, based upon the investigation made by and through its attorneys, the following:

### SUMMARY OF ACTION

1. Plaintiff brings this class action on behalf of itself and all other public stockholders of defendant Ace Cash Express, Inc. ("ACE" or the "Company"), who have been damaged by the breaches of fiduciary duties owed to them by defendant ACE and its directors, Jay B. Shipowitz, Robert P. Allyn, J.M. Haggar, III, Marshall B. Payne, Michael S. Rawlings, Charles Daniel Yost, Raymond C. Hemmig, and Edward W. Rose, III, (collectively with ACE, the "ACE Defendants") and by the aiding and abetting thereof by Ace Holdings I, LLC ("Ace Holdings").

2.  The ACE Defendants breached their fiduciary duties of loyalty, honesty and fair dealing to the Company's public shareholders by favoring their own individual interests over the interests of the Company's public shareholders by agreeing to a going private transaction in which an investor group comprised of defendant Shipowitz, several members of ACE's senior management team and JLL Partners Fund V, L.P. ("JLL") will take the Company private at an unfair price and as a result of unfair dealing. Upon completion of the transaction, which is targeted to close in the fourth calendar quarter of 2006, ACE will become a wholly owned subsidiary of Ace Holdings, ACE's public shareholders will receive $30 cash per share and become disenfranchised from the Company, and the ACE Defendants, who constitute ACE's board of directors, will become directors of the surviving company, entrenched in their control and operation of the surviving company, and will receive substantial monies as a result of the merger agreement provisions accelerating the vesting of stock options and lifting the restrictions of certain shares (to which they would not otherwise be entitled), as more fully explained below.

3   Plaintiff alleges that it and the other members of the class are entitled to the relief requested because the ACE Defendants have engaged in acts and transactions that breached their fiduciary duties to plaintiff and the class. Having decided to sell the Company, the ACE Defendants were required to maximize the price obtained for its shares and, at a minimum, put the Company up for auction to the highest bidder through an impartial bidding process. The proposed transaction and the acts of defendants as alleged herein constitute self-dealing, deception, overreaching, a breach of the fiduciary duties owed to ACE stockholders and/or the aiding and abetting thereof by the defendants, causing damage to plaintiff and the class.

4.  The Investor Group defendants, defined below, knew of the fiduciary duties owed by the ACE Defendants to plaintiff and the class and that the transaction agreement is in violation of

those fiduciary duties, but facilitated, encouraged and provoked the transaction nevertheless. As such, the Investor Group defendants have aided and abetted the breaches of fiduciary duties by the ACE Defendants.

## JURISDICTION AND VENUE

5.  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332. There is complete diversity of citizenship between the plaintiff and defendants and the amount in controversy, inclusive of punitive damages and attorneys' fees, sought in this action exceeds $75,000, exclusive of interest and costs.

6.  This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

7.  Venue is proper in this district pursuant to Section 27 of the Exchange Act (28 U.S.C. §1391(b)). ACE is a Texas corporation which conducts business and maintains its principal executive offices in this district.

## THE PARTIES

8.  Plaintiff The Joel & Zehava Rosenfeld Family Foundation Trust is and has been a stockholder of the Company at all times relevant to the allegations herein and is a New York trust.

9.  Defendant ACE is a corporation duly organized and existing under the laws of the State of Texas. As stated in its public filings and the Company's website, ACE owns and operates check cashing stores located throughout the United States. The Company offers money order sales, wire transfer services, electronic tax filing, and bill payment services. As of March 31, 2006, ACE had a network of 1,557 stores in 36 states and the District of Columbia, consisting of 1,328 company-owned stores and 229 franchised stores. The Company's stock is publicly traded on NASDAQ under the symbol "AACE."

10. Defendant Ace Holdings I, LLC ("Ace Holdings"), is a limited liability company duly organized and existing under the laws of the State of Delaware. Ace Holdings is an entity formed for the purpose of consummation of the merger. Upon completion of the proposed transaction, Ace Holdings will become the sole owner and parent company of ACE, which will be the wholly owned subsidiary to survive the merger.

11. Defendant Jay B. Shipowitz ("Shipowitz"), a Texas resident, is, and has been at all times relevant hereto, Chief Executive Officer, President, Chief Operating Officer, and a director of the Company. He has been a director of the Company since January 2000. Shipowitz served as the Company's Senior Vice President and Chief Financial Officer from 1997 to 2000. He also serves as a director of Financial Service Centers of America, Inc. As a member of the Investor Group, Shipowitz's self-interest is to acquire the Company at as little cost as possible, irrespective of the true value of the Company. Pursuant to the merger agreement, more than 75,000 shares of restricted stock belonging to defendant Shipowitz will have their restrictions lifted, notwithstanding the lack of fulfillment of the terms otherwise required to lift the restrictions on the stock, and approximately 100,000 shares underlying unvested stock options will vest, notwithstanding the non-fulfillment of the terms for vesting apart from the merger agreement.

12. Defendant Robert P. Allyn ("Allyn"), a Texas resident, is, and has been at all times relevant hereto, a director of the Company. He has been a director of the Company since 2004. Allyn serves on the Compensation Committee of the Board. He is President and CEO of Allyn & Company, Inc., a public relations, advertising, public affairs and political media firm he founded 22 years ago. More than just a passive, non-interested and independent director of the Company, Allyn has made contributions of significant sums to the Ace Cash Political Action Committee. Pursuant to the merger agreement, more than 1,100 shares of restricted stock belonging to defendant Allyn

will have their restrictions lifted, notwithstanding the lack of fulfillment of the terms otherwise required to lift the restrictions on the stock, and approximately 3,700 shares underlying unvested stock options will vest, notwithstanding the non-fulfillment of the terms for vesting apart from the merger agreement.

13. Defendant J.M. Haggar, III ("Haggar"), a Texas resident, is, and has been at all times relevant hereto, a director of the Company. He has been a director of the Company since 2004. Haggar serves on the Compensation Committee of the Board. He has served as Chairman of the Board and Chief Executive Officer of Haggar Corp., a designer, manufacturer, importer and marketer of men's and women's apparel. Pursuant to the merger agreement, more than 1,100 shares of restricted stock belonging to defendant Haggar will have their restrictions lifted, notwithstanding the lack of fulfillment of the terms otherwise required to lift the restrictions on the stock, and approximately 3,700 shares underlying unvested stock options will vest, notwithstanding the non-fulfillment of the terms for vesting apart from the merger agreement.

14. Defendant Marshall B. Payne ("Payne"), a Texas resident, is, and has been at all times relevant hereto, a director of the Company. He has been a director of the Company since 1987, when CIC Partners LP, a private equity investment firm, originally purchased the Company before taking it public. He serves on the Audit Committee of the Board. Since 2004, Payne has been the Senior Partner of CIC Partners LP. More than just a passive, non-interested and independent director of the Company, Payne has made significant contributions to the Ace Cash Political Action Committee and has been connected in many capacities with ACE and defendants Shipowitz, Rawlings, Hemmig and Rose since 1987 in his capacity as a member of CIC Partners LP. Pursuant to the merger agreement, more than 1,100 shares of restricted stock belonging to defendant Payne will have their restrictions

lifted, notwithstanding the lack of fulfillment of the terms otherwise required to lift the restrictions on the stock.

15. Defendant Michael S. Rawlings ("Rawlings"), a Texas resident, is, and has been at all times relevant hereto, a director of the Company. He has been a director of the Company since 2000. Rawlings serves as Chairman of the Audit Committee of the Board. Since 2004, he has been a partner of CIC Partners LP, the private equity investment firm that originally purchased the Company in 1987 and subsequently brought the Company public. More than just a passive, non-interested independent director of the Company, Rawlings has made significant contributions to Ace Cash Political Action Committee and has been connected in many capacities with ACE, Shipowitz, Payne, Hemmig and Rose in his capacity as a member of CIC Partners LP. Pursuant to the merger agreement, more than 1,100 shares of restricted stock belonging to defendant Rawlings will have their restrictions lifted, notwithstanding the lack of fulfillment of the terms otherwise required to lift the restrictions on the stock.

16. Defendant Charles Daniel Yost ("Yost"), a Texas resident, is, and has been at all times relevant hereto, a director of the Company. He has been a director of the Company since 1996. Yost serves on the Audit Committee of the Board. Since 2004, Yost has been Executive Vice President, Product and Marketing, for Qwest Communications International, Inc. Pursuant to the merger agreement, more than 1,100 shares of restricted stock belonging to defendant Yost will have their restrictions lifted, notwithstanding the lack of fulfillment of the terms otherwise required to lift the restrictions on the stock.

17. Defendant Raymond C. Hemmig ("Hemmig"), a Texas resident, is, and has been at all times relevant hereto, Chairman of the Board of the Company. He has been a director, and Chairman of the Board of ACE since 1988. Hemmig served as the Company's Chief Executive

Officer from 1988 to 1994. He currently serves as Chairman of the Board of Buffet Partners, L.P., (another company in which CIC Partners LP is a substantial investor) and as a director of Restoration Hardware, Inc. (a company in which CIC Partners LP formerly was a significant investor). More than just a passive, non-interested independent director of the Company, Hemmig was the previous CEO of the Company, has made significant contributions to the Ace Cash Political Action Committee and has been connected in many capacities with Shipowitz, Payne, Rawlings and Rose through their relationship with CIC Partners LP and its ventures. Pursuant to the merger agreement, more than 1,100 shares of restricted stock belonging to defendant Hemmig will have their restrictions lifted, notwithstanding the lack of fulfillment of the terms otherwise required to lift the restrictions on the stock. Furthermore, although Hemmig is expected to continue as a director of ACE upon consummation of the merger, pursuant to the terms of the merger agreement, should he be terminated, Hemmig will continue to receive compensation for an additional six years under a compulsory consulting agreement.

18.     Defendant Edward W. Rose, III ("Rose"), a Texas resident, is, and has been at all times relevant hereto, a director of the Company. He has been a director of the Company since 1987. Rose serves as Chairman of the Audit Committee of the Board. He also serves as Chairman of the Board of Drew Industries, Inc., and is the founding member and President of Cardinal Investment Company, which owns a significant stake of ACE, Buffet Partners and Restoration Hardware, Inc. More than just a passive, non-interested independent director of the Company, Rose has made significant contributions to Ace Cash Political Action Committee and has been connected in many capacities with Shipowitz, Payne, Rawlings and Hemmig through their interlocking investments in multiple companies. Pursuant to the merger agreement, more than 1,100 shares of restricted stock

belonging to defendant Rose will have their restrictions lifted, notwithstanding the lack of fulfillment of the terms otherwise required to lift the restrictions on the stock.

19.     Defendants Shipowitz, Allyn, Haggar, Payne, Rawlings, Yost, Hemmig, and Rose are collectively referred to as the "Individual Defendants."

20.     Defendants Ace Holdings and Shipowitz are collectively referred to as the "Investor Group" defendants.

## CLASS ACTION ALLEGATIONS

21.     Plaintiff brings this class action pursuant to Rule 23(a) and (b)(2) and/or (b)(3) of the Federal Rules of Civil Procedure on behalf of itself and all other similarly situated owners of the publicly-traded securities of ACE (the "Class"). Excluded from the Class are defendants, any entity in which a defendant has a controlling interest and any of the defendants' subsidiaries, affiliates, and officers, directors or employees, and any family member, legal representative, heir, successor, or assignee of defendants.

22.     The class is so numerous that joinder of all members is impracticable. The number and identity of the members of the class of ACE securities can be ascertained from the books and records of the Company and/or its agents. As of April 27, 2006, ACE had 14,237,168 shares outstanding. The members of the class are scattered throughout the United States.

23.     There are many questions of law and fact which are common to the Class and which predominate over questions affecting any individual Class member. The common questions include, inter alia, the following:

(a)     whether defendants have engaged in conduct constituting unfair dealing to the detriment of the Class;

(b)     whether the transaction is grossly unfair to the Class;

(c)     whether the Individual Defendants are engaging in self-dealing to benefit themselves and/or their colleagues;

(d)     whether plaintiff and the other members of the Class would be irreparably damaged were the transaction complained of herein consummated;

(e)     whether the ACE Defendants have breached their fiduciary and other common law duties owed by them to plaintiff and the other members of the Class; and

(f)     whether the Investor Group defendants have aided and abetted the breaches of fiduciary duties by the ACE Defendants.

24.     Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. The claims of plaintiff are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

25.     The likelihood that individual members of the Class will prosecute separate individual actions is remote due to the burden and expense of prosecuting litigation of this nature and magnitude. Plaintiff anticipates that there will not be any difficulty in the management of this litigation as a class action.

26.     Certification of the Class is also appropriate under Fed. R. Civ. P. 23(b)(2) because the defendants have acted in concert in breaching their fiduciary duties and have failed to uphold those duties which are generally applicable to the Class as a whole, thereby making appropriate final injunctive relief with respect to the Class as a whole.

27. For the reasons stated herein, a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## SUBSTANTIVE ALLEGATIONS

28. On January 26, 2006, ACE announced its financial results for the second fiscal quarter 2006. The Company reported that ACE's total revenue increased 12% to $72.3 million from $64.7 million in the prior year period, due primarily to a 13% increase in check cashing fees, an 8% increase in loan fees and interest, and a 23% increase in bill payment and prepaid debit card services. Among ACE's accomplishments during the quarter were: ACE company-owned stores cashed over 3.6 million checks with a face value of approximately $1.4 billion, resulting in check-cashing fees for the quarter of $33.0 million, up 13% from the prior year period; ACE company-owned stores processed over 2 million bill payment and debit card transactions resulting in revenue increase of 23% to $6.1 million, from $4.9 million in the prior year period.

29. In the January 26, 2006 press release announcing ACE's financial results, defendant Shipowitz commented:

> We remain confident in our long-term disciplined growth strategy of de novo store development complemented by opportunistic acquisitions and the introduction of new products and services. We continue to believe that there are increased consumer and financial performance benefits related to offering our customers a full suite of financial products in an expanding network of stores. With over 1,500 locations and a diversified product and service offering, we believe ACE has developed a unique network serving the financial services needs for our customers.

\* \* \*

> We are continuing to leverage our network to offer new products and services such as VISA and MASTERCARD prepaid cards, payroll cards, and enhanced ACE loyalty card, and the ability to access money on a stored value card.

30. On February 2, 2006, *CashFlowNews.com* reported that free cash flow for ACE for its quarter ended December 31, 2005, was $13,309,000, a 240% increase over the year earlier same quarter when ACE generated $3,911,000 in free cash flow. According to *CashFlowNews.com,* free cash flow for the most recent quarter reached a nine year high.

31. On February 3, 2006, *CashFlowNews.com* reported that ACE's EBITDA for the twelve months ended December 31, 2005, was $9,989,000, a 23% increase over the year earlier period, when ACE generated $8,096,000 in EBITDA, an eight year high.

32. On April 27, 2006, ACE announced financial results for its fiscal third quarter 2006. The Company reported net income of $9.9 million and diluted earnings per share of $0.68, compared to $9.9 million and diluted earnings per share of $0.71 in the corresponding quarter of the prior year. ACE's total revenue increased 16% to $91.2 million from $78.5 million in the prior year period, due primarily to a 19% increase in check cashing fees, an 18% increase in loan fees and interest, and a 33% increase in bill payment services.

33. In the April 27, 2006 press release announcing the Company's fiscal third quarter results, defendant Shipowitz commented:

> Third quarter financial results reflect continued success in offering our customers a full suite of retail financial products in an expanding network of stores. This strategy resulted in strong comparable store sales increases, particularly in our core check cashing business, the short-term consumer loan business and the stored value card business.
>
> * * *
>
> Our network grew to 1,557 stores at the end of the fiscal third quarter of 2006, reflecting our long-term disciplined growth strategy of de novo store development complemented by opportunistic acquisitions. During the last 24 months, we have opened 122 ACE Cash Express stores and 63 ACE Cash Advance stores that have not yet contributed

meaningfully to our bottom-line. These new stores are meeting our performance expectations and as these stores mature we should begin to see an increasing bottom-line contribution from them over the next several quarters.

34. On June 7, 2006, ACE announced that it had entered into a merger agreement with the Investor Group defendants, pursuant to which JLL, defendant Shipowitz and certain members of ACE's senior management team would acquire all of the outstanding shares of ACE's common stock for $30.00 per share in cash. After the completion of the merger, defendant Shipowitz will continue in his role as ACE's President and Chief Executive Officer and each of the Individual Defendants will continue as directors of ACE, but the public shareholders will be disenfranchised.

### The Individual Defendants' Breaches of Fiduciary Duty

35. Pursuant to the merger agreement with the Investor Group, each of the Individual Defendants will continue to serve in their capacities as directors of Ace Holdings and defendant Shipowitz will become the CEO of the new company. As a member of the Investor Group, Shipowitz's self-interest is to acquire the Company at as little cost as possible, irrespective of the true value of the Company.

36. Under the merger agreement, all outstanding stock options will vest immediately after the consummation of the merger, and all restricted stock will have their restrictions lifted. As a result of the merger, the Individual Defendants, who own thousands of options and/or shares of restricted stock, will stand to gain substantial cash payments for their options and restricted stock to which they would otherwise not be entitled.

37. In addition, by virtue of their interconnecting and mutually beneficial professional relationships and affiliations, and by making substantial donations to a political organization closely

associated with ACE, none of which have been disclosed to ACE shareholders, defendants Allyn, Payne, Rawlings, Hemmig and Rose have divided loyalties and, as a result, are incapable of making an independent, impartial and fair evaluation of the facts and circumstances surrounding the proposed merger, to the detriment of the Class.

38. The foregoing circumstances create a conflict of interest at odds with the Individual Defendants' fiduciary obligations to be faithful to ACE's public shareholders and not elevate their own personal interests over those of ACE's public shareholders.

### Summary of the Breaches

39. By the acts, transactions and courses of conduct alleged herein, the defendants, individually, and as part of a common plan and/or scheme and/or aiding and abetting one another in total disregard of their respective fiduciary duties, have pursued a plan to divest plaintiff and the other members of the Class of their investments in the Company at a grossly inadequate price and as a result of unfair dealing.

40. As demonstrated by defendants' public statements and financial reports, ACE was achieving substantial operating successes and was poised for future growth and profitability, due, in part, to the accretive effect on its future stock price from, among other things, the Company's more recent - and yet to be fully integrated - acquisitions, made at the Class' expense.

41. Through the transaction with the Investor Group Defendants, which constitutes gross overreaching, deception and manipulation, defendants have violated their fiduciary, common law and statutory duties owed to the investing public, and/or aided and abetted the violations thereof.

42. In agreeing to the transaction, by not putting the Company up for auction, in failing to disclose the material non-public information in their possession as to the value of the Company's assets and as to the Individual Defendants' conflicts of interest, and by failing to take

reasonable and necessary steps to maximize the value of the Company, the defendants are not acting in good faith toward the Class and have breached their fiduciary duties to the Class. Moreover, through their actions, defendants have capped the price for which the publicly held shares of ACE could ever be acquired without taking adequate steps to determine the fair value of such shares. Indeed, the massive break-up fee of $15 million, or more than $1.00 per share, virtually eliminates the possibility of ACE receiving a better offer for its shares. The price to be paid by the Investor Group was set artificially low to satisfy the group, but is grossly unfair.

43.     Prior to the public announcement of the transaction, the defendants did not create a level playing field or act so that the interests of the public stockholders were protected. By, among other things, agreeing to pay a $15 million break-up fee to the Investor Group if the transaction is terminated, defendants made ACE less attractive as an acquisition candidate to any party other than the Investor Group.

### CAUSE OF ACTION I -- FOR BREACH OF FIDUCIARY DUTY AGAINST INDIVIDUAL DEFENDANTS

44.     Plaintiff incorporates by reference the prior allegations set forth above.

45.     The Individual Defendants owe plaintiff and other ACE shareholders a fiduciary duty of due care, honesty, candor and loyalty.

46.     The Individual Defendants have violated the fiduciary and other common law duties owing to plaintiff and the other members of the Class in that they have not and are not exercising independent business judgment, have acted and are acting to the detriment of plaintiff and the other members of the Class in order to remain entrenched at ACE and receive substantial and immediate pecuniary gain upon the completion of the merger. All defendants have partici-

pated in and substantially and knowingly aided and abetted the aforesaid breaches of fiduciary duty and plan and scheme.

47.     The Individual Defendants have violated the fiduciary and other common law duties owing to plaintiff and the other members of the Class in that they have not and are not exercising independent business judgment, have acted and are acting to the detriment of plaintiff and the other members of the Class in agreeing to the $15 million break-up fee with the Investor Group defendants. The Individual Defendants each participated in and substantially and knowingly aided and abetted the aforesaid breaches of fiduciary duty and plan and scheme.

48.     As a result of the actions of the Individual Defendants, plaintiff and the other members of the Class have been and will be damaged in that they have not received and will not receive their fair proportion of the value of the Company's assets and business, have been and will be prevented from obtaining a fair price for their common stock, and have been and will be effectively disenfranchised. In sum, plaintiff and the other Class members are immediately threatened by the acts and transactions complained of herein which have and will cause irreparable injury to them.

### CAUSE OF ACTION II -- FOR AIDING AND ABETTING AGAINST ACE AND INVESTOR GROUP DEFENDANTS

49.     Plaintiff incorporates by reference the prior allegations set forth above.

50.     This cause of action is asserted against ACE and the Investor Group defendants as aiders and abettors of the Individual Defendants.

51.     By reason of the above, the Individual Defendants breached their fiduciary duties to plaintiff and the Class.

52.     By reason of the above, plaintiff and the Class have sustained and will continue to sustain serious damage for which relief is sought in this complaint.

53.   Plaintiff and the Class have no adequate remedy at law.

54.   Defendants ACE and the Investor Group were aware of the primary violations of the Individual Defendants. With knowledge of the primary violations, they lent substantial assistance to the Individual Defendants in furtherance of their breaches of fiduciary duty and in furtherance of their own interests and not the interests of the plaintiff and the Class. ACE and the Investor Group defendants are therefore liable to plaintiff and the Class for aiding and abetting the Individual Defendants in the violations of their fiduciary duties.

WHEREFORE, plaintiff prays for judgment and relief against defendants and each of them as follows:

(1)   Certifying this action as a class action and certifying the plaintiff as Class representative;

(2)   Preliminarily and permanently enjoining defendants and all persons acting in concert with them, from proceeding with, consummating or closing the proposed merger;

(3)   Invalidating and setting aside the $15 million break-up fee;

(4)   In the event the proposed merger is consummated, rescinding it and setting it aside or awarding rescissory and/or compensatory damages to the Class;

(5)   Awarding plaintiff and the Class punitive damages;

(6)   Awarding plaintiff the costs and disbursements of this action and reasonable attorneys' and experts' fees; and

(7)   Awarding such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: June 21, 2006

Respectfully submitted,

*/s/ Roger L. Mandel*

Roger L. Mandel
State Bar No. 12891750
Martin Woodward
State Bar No. 00797693
STANLEY, MANDEL & IOLA, L.L.P.
3100 Monticello Avenue, Suite 750
Dallas, Texas 75205
214/443-4300 (Telephone)
214/443-0358 (Facsimile)

Joseph H. Weiss
Mark D. Smilow
Ilya Nuzov
WEISS & LURIE
551 Fifth Avenue
New York, New York 10176
Phone: (212)682-3025
Fax:   (212)682-3015

ATTORNEYS FOR PLAINTIFF

JS 44
(Rev 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

THE JOEL AND ZEHAVA ROSENFELD FAMILY FOUNDATION TRUST, on behalf of itself and all others similarly situated

**DEFENDANTS**
ACE CASH EXPRESS, INC.; ACE HOLDINGS I, LLC;
JAY B. SHIPOWITZ, ROBERT P. ALLYN, J.M. HAGGAR, III;
MARSHALL B. PAYNE; MICHAEL S. RAWLINGS; CHARLES DANIEL YOST; RAYMOND C. HEMMIG, and EDWARD W. ROSE, III

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF __New York__
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT Dallas
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Roger L. Mandel & Martin Woodward, Stanley, Mandel & Iola, LLP, 3100 Monticello Ave., Ste. 750, Dallas, Texas; 214-443-4300; 214-443-0358 (fax);

ATTORNEYS (IF KNOWN)

**306-CV1100-G**

## II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ | Incorporated or Principal Place of Business in This State | ☐ 4 | ☒ |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury Med. Malpractice | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 RR & Truck | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (excl Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 830 Patent | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | ☐ 840 Trademark | ☐ 850 Securities/Commodities/Exchange |
| ☒ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 730 Labor/Mgmt Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **HABEAS CORPUS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 530 General | | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | ☐ 791 Empl Ret Inc Security Act | ☐ 871 IRS — Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

Complaint alleging that the Defendant company, and its individual directors, breached fiduciary duties owed to Plaintiff and all other public stockholders.

## VII. REQUESTED IN COMPLAINT:
☒ CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P 23

**DEMAND $**

CHECK YES only if demanded in complaint
**JURY DEMAND:** ☒ YES ☐ NO

## VIII. RELATED CASE(S) (See instructions):
IF ANY
JUDGE _____  DOCKET NUMBER _____

DATE: JUNE 21, 2006

SIGNATURE OF ATTORNEY OF RECORD
ROGER L. MANDEL

**FOR OFFICE USE ONLY**
RECEIPT # ____ AMOUNT ____ APPLYING IFP ____ JUDGE ____ MAG JUDGE ____